IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED

JUN 1 2005

U.S. DISTRICT COURT

WEST VIRGINIA ADVOCATES, Inc.,

        Plaintiff,

v.

Case No. _1:05cv89_

BOARD OF EDUCATION OF MONONGALIA
COUNTY;
JANICE CHRISTOPHER, Ph.D., in her official
capacity as Acting Superintendent of Monongalia
County Schools; and
DEEDRA J. LUNDEEN, in her official capacity
as Director of Special Education of Monongalia
County Schools,

        Defendants.

## COMPLAINT

### Preliminary Statement

Plaintiff West Virginia Advocates, Inc., ("West Virginia Advocates" or "WVA"), brings

this action for declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28

U.S.C. §§2201 and 2202, and the Developmental Disabilities Assistance and Bill of Rights Act

("DD Act"), 42 U.S.C. §15041 *et seq.*  WVA challenges the refusal of Defendants Monongalia

County Board of Education ("Board" or "Monongalia Co. Schools"),[1] Acting Superintendent

Janice Christopher ("Christopher"), and Special Education Director Lundeen ("Lundeen") to

grant access to WVA, under WVA's federal statutory and regulatory authority, to inspect the

---

[1] The board is designated in the form "Board of Education of Monongalia
County" in the caption because W. Va. Code §18-5-5 makes county boards of education
amenable to suit when so named.  The term "Monongalia Co. Board of Education," and
other terms in the text such as "Monongalia County Schools," are used interchangeably in
the complaint with the board's formal designation in the caption.

portion of Mountainview Elementary School (which defendants operate) where disabled children are educated, to investigate possible abuse or neglect of a disabled child, based on information constituting probable cause to suspect that such abuse or neglect has occurred or is occurring at the school.[2]

After making unsuccessful efforts to obtain the consent of the mother of the child who is the subject of the abuse and neglect report,[3] WVA requested access to the facility, and to the child's records, under the authority of the federal statutes and regulations which authorize such access for protection and advocacy systems such as WVA, to investigate when there is probable cause to suspect abuse or neglect, even without a parent or guardian's consent. Defendants refused to provide access.

On May 31, 2005, WVA obtained the mother's consent and returned to Mountainview School with the consent in hand. School personnel again refused access. Transmission of the consent to defendants' counsel likewise did not result in access being granted, although the defendants' lawyer had earlier assured the undersigned that access would not be a problem with a parent's consent.

WVA challenges defendants' refusal to permit it access to the school during hours when students are in attendance, and their refusal to permit WVA access to school and student records

---

[2] WVA also operates pursuant to 42 U.S.C. §§10801-10827, the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI"), and 29 U.S.C. §794e, *et seq.*, the Protection and Advocacy of Individual Rights Act ("PAIR"). Both these statutes grant protection and advocacy systems such as WVA access similar to that granted under the DD Act. This complaint does not rely on the PAIMI or PAIR Acts, however, because at the time of its preparation, the facts appear to involve developmental disabilities.

[3] The mother agreed on numerous occasions to supply the consent but did not initially follow through.

necessary for WVA to determine whether abuse and neglect has occurred or is occurring at the school. Defendants' refusals prevent WVA, the state and federally designated Protection and Advocacy System for persons with disabilities in West Virginia, from fulfilling its statutory mandates to investigate allegations of abuse and neglect, and to provide protection and advocacy services for individuals with disabilities. The actions of the Defendants further prevent WVA from determining whether the rights of students to be free from abuse and illegal restraint are being violated, and whether there are appropriate procedures in place to prevent incidents of abuse and neglect.

## JURISDICTION AND VENUE

1.       The court has jurisdiction over this action pursuant to 28 U.S.C. §1331.  Plaintiff's federal claims are made pursuant to the DD Act, 42 U.S.C. §15041 <u>et seq</u>. Declaratory and injunctive relief are authorized by 28 U.S.C. §§2201 and 2202.

2.       Venue is appropriate in this district pursuant to 28 U.S.C. §1391(b).  All of the acts, refusals to act, and events complained of below occurred in this district.

## PARTIES

3.       Plaintiff WVA is a West Virginia nonprofit corporation and is the West Virginia protection and advocacy system designated by the Governor of West Virginia, as required by federal law, to provide protection and advocacy services to individuals with disabilities in West Virginia.  Copies of the governor's designation, and of its acknowledgment by the federal authority, are attached to this complaint.  WVA is allotted federal funds pursuant to  the DD Act, as well as PAIMI, and PAIR (see footnote 2 above), and is thereby obligated to similarly provide protection and advocacy for persons with mental illness, developmental disabilities, and

-3-

individuals with disabilities who are not eligible under PAIMI or the DD Act.  42 U.S.C.

§§10803 – 10804, 42 U.S.C. §15041 *et seq.*, 29 U.S.C. §794e, *et seq.*

4.     Under these statutes, WVA is also authorized and – like its counterpart protection

and advocacy ("P&A") systems in other states – required to investigate suspected incidents of

abuse and neglect and to pursue administrative, legal and other remedies on behalf of covered

individuals with disabilities wherever programs for such individuals are operated within the

State or within the state's control.

5.     WVA has its principal offices at the location indicated below under counsel's

signature, in Charleston, Kanawha County, West Virginia, and maintains satellite locations at

various places throughout the state, in both the Southern and Northern Districts of West

Virginia.

6.     Defendant Monongalia County Board of Education is a municipal corporation and

a political subdivision of the State of West Virginia.  It is amenable to suit under W.Va. Code

§18-5-5.  Under W.Va. Code §18-5-13(a), it has the authority to "control and manage all of the

schools" in Monongalia County, including Mountainview School.

7.     Defendant Dr. Janice Christopher is the Acting Superintendent of Monongalia Co.

Schools.  In that capacity, she is the chief administrative officer of Monongalia Co. Schools.

Christopher has refused to authorize access by WVA to Mountainview School and, on

information and belief, has directed other employees and agents of Monongalia Co. Schools to

refuse such access to WVA and its representatives.  She is sued in her official capacity.

8.     Defendant DeEdra J. Lundeen is the Director of Special Education of Monongalia

Co. Schools.  In that capacity, she is charged with the education of students with disabilities for

the school system.  Lundeen has refused to authorize access by WVA to Mountainview School

-4-

and, on information and belief, has directed other employees and agents of Monongalia Co. Schools to refuse such access to WVA and its representatives. Specifically, Lundeen has caused WVA to be denied access even under the authorization of the parent of the student who is named elsewhere in this complaint. She is sued in her official capacity.

**FACTS**

9.      Mountainview Elementary School, operated by defendants, serves a number of elementary students with developmental disabilities in a class room which, on information and belief, is dedicated to students who are severely and profoundly disabled (described in greater detail below). Mountainview Elementary School is located at 661 Greenbag Road, Morgantown, West Virginia 26508, in Monongalia County.[4]

10.      The care of at least some of the students with disabilities who attend Mountainview is managed by Valley Healthcare System ("Valley"), a behavioral health care center for individuals with developmental disabilities based in Morgantown, West Virginia.

11.      On approximately May 2, 2005, the Valley case manager for an elementary student who will be designated in this complaint as James B-D, or simply "James," contacted WVA's intake unit. James B-D. was at that time 8 years old (DOB 6/26/96). His diagnoses were reported as Cerebral Palsy, and neurological disorders.

12.      James has developmental disabilities so severe and profound that he has been placed in defendants' profound mental impairment class room. His ability to ambulate is severely limited, and he requires assistance to walk. He is described as non-verbal. James is

---

[4] On information and belief, Monongalia County Schools has chosen to segregate all of its severely and profoundly developmentally disabled elementary school students in this single class room.

therefore among the most vulnerable of the persons with disabilities for whom WVA is mandated by federal law to advocate, and whom WVA is federally mandated to protect.

13.     James B-D. was and is a student at Mountainview School.

14.     The Valley Healthcare case manager reported to WVA allegations regarding JBD constituting probable cause to suspect that he was being subjected to abuse or neglect at Mountainview.

15.     In general terms, and without disclosing details which might compromise WVA's ability to investigate, the information from Valley suggested that James was being subjected to inappropriate physical restraint, possibly involving a specialized chair with physically restraining devices.  The information also suggested that James might be at risk for other types of physical injury.  In light of his disabilities, James would be unable to communicate this to other persons.

16.     The Mountainview case manager also reported to WVA that the same allegations had been reported to the local Child Protective Services ("CPS") office of the West Virginia Department of Health and Human Services, but that no CPS investigation had occurred.

17.     On receipt of the Mountainview referral, WVA followed its normal procedure and assigned the case to WVA Regional Advocate Todd Rundle, who is headquartered in Fairmont, West Virginia, and whose territory includes Monongalia County.  Rundle contacted James's mother to seek her consent to investigate the Valley Healthcare report.

18.     Rundle experienced difficulty making contact with the mother, who he concluded made use of a prepaid cell phone, on which the time had expired.

19.     Rundle then contacted personnel at Valley Healthcare to investigate the allegations with them, and to review the records they maintain on James.

20.     On May 19, 2005, Rundle went to Mountainview School, where he contacted the principal, Stephen King, and requested access to the facility and to James and his records, citing WVA's statutory right of access pursuant to federal statute and regulation.  42 U.S.C. §15043(a)(2)(H) - (J);  45 C.F.R. §1386.22.

21.     In response to inquiry whether he had a written consent, Rundle stated that he had been unable to obtain one, and explained WVA's statutory and regulatory basis for access to investigate probable cause to suspect abuse or neglect.

22.     After telling Rundle that he would consult with the superintendent's office (or the central office), the principal eventually denied Rundle any access to the facility, instructing him that he must first obtain a written consent from the parent or guardian, that even with consent he needed to make an appointment beforehand, and that he needed to contact the office of Defendant Lundeen, also beforehand.

23.     Following Rundle's unsuccessful effort to access the school, also on May 19, 2005, the undersigned wrote to Harry M. "Moe" Rubenstein, Esq., counsel for defendants, citing to him WVA's statutory and regulatory right to access to persons, facilities, and records for purposes of investigation, and requesting that he facilitate access to Mountainview for WVA.

24.     On May 20, 2005, Rundle returned to Mountainview School and again sought access.  He was again denied access, and this time, he was summarily invited to leave the premises.

25.     During the week of May 23, 2005, WVA negotiated by counsel with defendants, in an effort to find a voluntary resolution.  The undersigned sought from Attorney Rubenstein a list of conditions under which his clients would permit access; none was forthcoming.

-7-

26.     On May 27, 2005, as WVA was preparing to file this law suit, a consent signed by James's mother was received.  On discovery of a typographical error in the consent, it was revised, and Mr. Rundle attempted over the Memorial Day weekend to contact the mother to have her sign the revised consent.

27.     On the Tuesday after the Memorial Day weekend, May 31, 2005, the mother executed a corrected consent, a copy of which is attached to this complaint.

28.     Also on May 31, 2005, with the consent in hand, Rundle returned to Mountainview School to seek access.  He was informed that it was Celebration Day, that the school was full of parents, and that it was therefore a particularly inconvenient time for him to visit.  Rundle suggested to no avail that, with the school full of outsiders, his visit would be even less disruptive than it might ordinarily be.

29.     After again being kept waiting while school officials contacted the central office, Rundle was informed that defendant Lundeen had instructed school personnel to tell Rundle that he "needed to contact his supervisor," and that he would be refused access until the school district's lawyer said it was OK.

30.     After faxing a copy of the mother's release to Mr. Rubenstein on the morning of May 31, 2005, the undersigned telephoned him and inquired whether his clients' objections had now been resolved.  Rubenstein described the situation as "complicated" and "confusing," and declined to predict either that his clients would permit access or when they would decide, even with the parental consent.

## CLAIM FOR RELIEF

31.     Plaintiff incorporates herein ¶¶ 1 through 28 of this complaint.

-8-

32.     WVA, as West Virginia's designated protection and advocacy system, has the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities, to protect the rights of individuals with disabilities if there is probable cause to believe that the incidents occurred.  42 U.S.C. §15043(a)(2)(B).

33.     The DD Act specifically grants to WVA the authority to access facilities which provide assistance to individuals with developmental disabilities, to protect the rights of those individuals.  42 U.S.C. §15043(a)(2)(H), 45 C.F.R. § 1386.22(f) and (g).

34.     WVA has the authority to have access to records of individuals with developmental disabilities, to protect the rights of individuals with disabilities.  42 U.S.C. §15043(a)(2)(I) and (J). 45 C.F.R. §1386.22(a ) - (e).

35.     Defendants' failure to permit WVA to have access to Mountainview School facilities when students are present, to have access to James's records, and to conduct an investigation, violates the DD Act.

36.     Plaintiff has no adequate remedy at law and will be irreparably harmed if the defendants are permitted to continue to deny it access to its facility, to its records on James, and to James in the facility.

### PRAYER FOR RELIEF

Plaintiff requests the following relief:

A. Entry of a declaratory judgment, pursuant to 28 U.S.C. §2201, declaring that the defendants' actions and failures to act violate the DD Act by:

1. Denying WVA access to Monongalia County Schools facilities when students are present;

2. Denying WVA access to records regarding James B-D.; and

3.  Preventing WVA from performing its statutory duty to investigate incidents of suspected abuse and neglect of persons;

all in violation of the DD Act.

B.  Entry of preliminary and thereafter permanent injunctive relief, pursuant to 28 U.S.C. §2202, requiring defendants to provide WVA with access to Mountainview School when students are present, with access to defendants' records on James B-D, and to permit WVA to conduct an investigation.

C.  Retention of jurisdiction over the case to ensure defendants' compliance with the mandates of the DD Act; and

D.  Such other, further, or different relief as the court concludes is equitable and just.

Respectfully submitted June 1, 2005.

WEST VIRGINIA ADVOCATES, INC.
By Counsel

Thomas J. Gillooly,
Legal Director
West Virginia Advocates, Inc.
1207 Quarrier St., 4th Floor
Charleston, WV 25301
304 346-0847
fax  346-0647
tgillooly@wvadvocates.org

-10-

MAY 17 1991

The Honorable Gaston Caperton
Governor
State of West Virginia
Charleston, West Virginia 25305

Dear Governor Caperton:

The purpose of this letter is to notify you that the assurances
submitted by the State of West Virginia, relative to the system
employed to protect and advocate the rights of persons with
developmental disabilities, have been reviewed and are in
compliance with the Federal statute. These assurances are
required by Section 142 of Public Law 100-146, the
Developmental Disabilities Assistance and Bill of Rights Act of
1990, in order for a State to receive an allotment under the
Act.

I appreciate your continuing support of the developmental
disabilites programs in West Virginia.

                                        Sincerely,


                                        Richard Spitzborg
                                        Acting Regional Administrator


cc: Deborah L. McFadden, Commissioner ADD
    James T. Suter, Director,
    West Virginia Advocates



ACF:KOCH:5/10/91:5741U



STATE OF WEST VIRGINIA
## OFFICE OF THE GOVERNOR
CHARLESTON 25305

GASTON CAPERTON
GOVERNOR

May 1, 1991

Mr. Richard Spitzborg
Regional Administrator
U.S. Department of Health
    and Human Services
Human Development Services
Post Office Box 13716
Philadelphia, Pennsylvania 19101

Dear Mr. Spitzborg:

Pursuant to the requirements of Public Law 101-496, The Developmental Disabilities Assistance and Bill of Rights Act of 1990, West Virginia Advocates is the designated Protection and Advocacy System in West Virginia.  The following assurances are made to you:

1.  Assurance is hereby given that the Protection and Advocacy System has the authority to pursue legal, administrative, and other appropriate remedies to ensure the protection of the rights of all persons with developmental disabilities.

2.  Assurance is hereby given that the Protection and Advocacy System has the authority to provide information on and referral to programs and services addressing the needs of persons with developmental disabilities.

3.  Assurance is hereby given that the Protection and Advocacy System is not administered by the State Planning Council and is independent of any agency which provides treatment services, or habilitation to persons with developmental disabilities.

4.  Assurance is hereby given that the State will recognize the priority of the Federal requirement for access to records of

OFFICE OF THE GOVERNOR

Mr. Richard Spitzborg
May 1, 1991
Page Two


persons with developmental disabilities by the Protection and Advocacy System over State laws prohibiting such access. Assurance is also given that such recognition will take place on October 31, 1991, or the date the System is no longer subject to such prohibition, whichever occurs first.

5.   Assurance is hereby given that on an annual basis, the Protection and Advocacy System will develop a statement of objectives and priorities, and will provide to the public, including persons with disabilities and their representatives, as appropriate, the Developmental Disabilities Council and the University Affiliated Program(s) (if applicable within the State), an opportunity to comment on the objectives and priorities, including --

(i)    the objectives and priorities for the system's activities for each year, and the rationale for the establishment of such objectives; and

(ii)   the coordination with the advocacy programs set out in the Rehabilitation Act of 1973, the Older Americans Act of 1965, and the Protection and Advocacy for the Mentally Ill Act.

6.   Assurance is hereby given that the Protection and Advocacy System will be provided with a copy of each annual survey report and plan of corrections for cited deficiencies made pursuant to Section 1902(a)(31)(B) of the Social Security Act with respect to any intermediate care facility for the mentally retarded in the State within 30 days after the completion of each such report or plan.

7.   Assurance is hereby given that the agency implementing the Protection and Advocacy System will not be redesignated unless:  (1) there is good cause for the redesignation; (2) notice has been given of the intention to make such redesignation to the agency that is serving as the system including the good cause for such redesignation; (3) the agency has been given an opportunity to respond to the assertion that good cause has been shown; (4) timely notice and opportunity for public comment in an accessible format has been given to persons with developmental disabilities or their

OFFICE OF THE GOVERNOR

Mr. Richard Spitzborg
May 1, 1991
Page Three


representatives; and (5) the system has the opportunity to appeal to the Secretary that the redesignation was not for good cause.

8.  Assurance is hereby given that if the Protection and Advocacy System is organized with a multi-member governing board, such governing board shall be selected according to the policies and procedures of the system, except that:  (1) the governing board shall be composed of members who broadly represent or are knowledgeable about the needs of the individuals served by the system; (2) not more than one-third of the membership of the governing board may be appointed by the chief executive officer of the State, where such officer has the authority to appoint the membership of the board; and (3) any vacancy shall be filled not later than 60 days after the date on which the vacancy occurs.

9.  Assurance is hereby given that the Protection and Advocacy System will establish a grievance procedure for clients or prospective clients of the system to assure that persons with developmental disabilities have full access to services of the system.

10.  Assurance is hereby given that the Protection and Advocacy has the authority to investigate incidents of abuse and neglect of persons with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred.

11.  Assurance is hereby given that the Protection and Advocacy System have access to all records of:

(A)  any person with developmental disabilities who is a client of the system if such person, or the legal guardian, conservator, or other legal representative of such person, has authorized the system to have such access;

(B)  any person with developmental disabilities 1) who, by reason of the mental or physical condition of such person, is unable to authorize the system to have such access; 2) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and 3) with respect to whom a complaint has been received by the system or with respect to whom there is probable cause as a result of

Mr. Richard Spitzborg
May 1, 1991
Page Four

OFFICE OF THE GOVERNOR

> monitoring or other activities to believe that such person has been subject to abuse and neglect; and

(C) any person with a developmental disability who has a legal guardian, conservator, or, other legal representative with respect to whom a complaint has been received by the system or with respect to whom there is probable cause to believe the health or safety of the individual is in serious and immediate jeopardy whenever:

> 1) such representatives have been contacted by such system upon receipt of the name and address of such representatives;
>
> 2) such system has offered assistance to such representatives to resolve the situation; and
>
> 3) such representatives have failed or refused to act on behalf of the person.

12. Assurance is hereby given that with regard to the requirement that the Protection and Advocacy System have access to records of persons with developmental disabilities, the term "records" includes reports prepared or received by any staff of a facility rendering care or treatment, or reports prepared by an agency or staff person charged with investigating reports of incidents of abuse or neglect, injury or death occurring at such facility that describes incidents of abuse, neglect, injury or death occurring at such facility and the steps taken to investigate such incidents, and discharge planning records.

13. Assurance is hereby given that the Protection and Advocacy System will not be precluded from bringing a suit on behalf of persons with developmental disabilities against the State or agencies or instrumentalities of the State.

14. Assurance is hereby given that the funds allotted to the State for the Protection and Advocacy Program will be used to supplement and increase the level of funds which would otherwise be made available for the purposes for which Federal funds are provided and not to supplant such non-Federal funds.

15. Assurance is hereby given that amounts received by the Protection and Advocacy System through court judgments and used by the system are limited to furthering the purpose of this part (part C) and shall not be used to augment payments to legal contractors or to award personal bonuses.

OFFICE OF THE GOVERNOR

Mr. Richard Spitzborg
May 1, 1991
Page Five


    Should  you  need  further  assurances,  please  feel  free  to
contact me.

                              Sincerely,

                              Gaston Caperton
                              Governor

GC/sh

05/31/2025  10:17    3042520854                    WV ADVOCATE                    PAGE  02



# WVA

# *West Virginia Advocates*
**The Protection and Advocacy System for West Virginia**

## Authorization for Release of Information and Records

I, Margo Baker-Victor, parent and legal guardian of James Baker Davenport ("James"), hereby authorize Mountainview School, Monongalia County Schools, treating physicians, the West Virginia Department of Education, Valley Health System, and the West Virginia Department of Health and Human Resources or any of its agencies, to release to West Virginia Advocates, Inc., its representatives, or agents, Litton Building, 4th Floor, 1207 Quarrier Street, Charleston, West Virginia 25301, any and all records of any sort in their possession or subject to their control and pertaining to James, including but not limited to educational records, medical, psychiatric, or psychological records, confidential information, correspondence, evaluations, court documents, and contractual agreements. I authorize the persons and entities named above, their officers, employees, or agents, and West Virginia Advocates, Inc., its representatives, or agents, to discuss any information or records regarding James. This release is valid for a term of one (1) year from the date of execution. A copy of this Release will be as valid as the original.

Date: _____5/31/05_____

Signed by: _Margo Baker Victor_
                    Margo Baker Victor
                    Client's Legal Representative

Client's Name: James Baker Davenport

Client SSN: _____

Client DOB: ___6/24/?_____

I understand that I may revoke this release at any time, upon written request.

304-346-0847 or 1-800-950-5250 (V/TDD)
(Fax) 304-346-0867
Litton Building 4th Floor
1207 Quarrier Street, Charleston, West Virginia 25301-1842

Received Time May.31. 10:54AM